1 F.3d 1246
NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
 Roger ELLIS, Plaintiff-Appellant,
v.
GELSON'S MARKETS; Arden-Mayfair, Inc., Defendants-Appellees.
 No. 92-55094.
 United States Court of Appeals, Ninth Circuit.
 Submitted July 15, 1992.
Decided July 29, 1993.
 
 Before GIBSON,** HALL and KLEINFELD, Circuit Judges.
 
 
 1
 MEMORANDUM***
 
 
 2
 Roger Ellis appeals the denial of his motion to remand to state court and the dismissal of his action against Gelson's for wrongful termination, discrimination, and intentional infliction of emotional distress, which was removed on the basis of federal preemption under LMRA Sec. 301 and dismissed on grounds of res judicata. We affirm.
 
 
 3
 * The central issue on appeal is whether removal jurisdiction exists in this case. The jurisdictional issue is intertwined with the preemption issue. See Galvez v. Kuhn, 933 F.2d 773, 776 (9th Cir.1991). Because section 301 of the Labor Management Relations Act ("LMRA") preempts Ellis's claim for intentional infliction of emotional distress, the claim presents a federal question and the district court had jurisdiction under 28 U.S.C. Sec. 1441. Although Ellis's other two claims, for termination in violation of public policy and discrimination, are not preempted, see Cook v. Lindsay Olive Growers, 911 F.2d 233, 238 (9th Cir.1990) (violation of state public policy); Paige v. Henry J. Kaiser Co., 826 F.2d 857, 863 (9th Cir.1987) (same), cert. denied, 486 U.S. 1054 (1988); Ackerman v. Western Elec. Co., 860 F.2d 1514, 1517 (9th Cir.1988) (discrimination); Miller v. AT & T Network Sys., 850 F.2d 543, 550 (9th Cir.1988) (same), supplemental jurisdiction exists to remove them because the emotional distress claim is preempted, see 28 U.S.C. Secs. 1367, 1441 (1988 & Supp.1990); Jackson v. Southern Cal. Gas Co., 881 F.2d 638, 642 (9th Cir.1989).
 
 
 4
 * Resolution of the preemption issue turns on the question of what conduct underlies Ellis's claim. The district court made no ruling on the matter, but its order considered only Ellis's termination and not the other wrongful conduct alleged. We interpret the district court's ruling as having accepted Gelson's argument that its other conduct was no longer actionable because the statute of limitations had run.
 
 
 5
 "Because intentional infliction of emotional distress is an injury to the person, the applicable statute of limitations is one year." Cantu v. Resolution Trust Corp., 6 Cal.Rptr.2d 151, 170 (Cal.App.1992); see Cal.Civ.Proc.Code Sec. 340(3) (West 1982). "A cause of action for intentional infliction of emotional distress accrues, and the statute of limitations begins to run, once the plaintiff suffers severe emotional distress as a result of outrageous conduct on the part of the defendant." Cantu, 6 Cal.Rptr.2d at 170; Eisenberg v. Insurance Co. of N. Am., 815 F.2d 1285, 1292 (9th Cir.1987).
 
 
 6
 Ellis relies primarily on Gelson's other conduct to defeat preemption, but points to his termination as the event that brings him within the statute of limitations. His argument is self-defeating. If the emotional distress injury really arises from the physical and verbal abuse, then Ellis's injury must have arisen by October 6, 1988, the latest date he worked at Gelson's. The conduct is no longer actionable because the cause of action accrued before July 12, 1989. If the injury arises from the termination on July 21, 1989, the claim is not time-barred, but it is preempted because the injury is substantially dependent upon the discharge. Resolution of the claim that the discharge was outrageous requires interpretation of the collective bargaining agreement ("CBA"), as discussed below.
 
 
 7
 Ellis's reliance on the "doctrine of continuing violations" and Williams v. Owens-Illinois, Inc., 665 F.2d 918, 924 (9th Cir.), cert. denied, 459 U.S. 971 (1982), is misplaced. Williams dealt with claims of discrimination, not intentional infliction of emotional distress, and Ellis cites no authority for the proposition that the same doctrine applies in emotional distress cases. The doctrine appears to be one purely of federal law, not state law. Moreover, Williams itself suggests the doctrine would not apply to Ellis's emotional distress claim. The doctrine applies to claims brought by present employees. 665 F.2d at 924. With respect to past employees, the Williams court reasoned that the discriminatory conduct "may place the victim out of reach of any further effect of company policy," so that a past employee must file a charge within the requisite time period after the wrongful conduct or be time-barred. Id.
 
 
 8
 If ... the victim can show no way in which the company policy had an impact on them within the limitations period, the continuing violation doctrine is of no assistance or applicability, because mere "continuing impact from past violations is not actionable. Continuing violations are."
 
 
 9
 Id. (quotation omitted). Although Ellis was technically still an employee, his leave of absence renders him more like a past employee in terms of being out of reach of the impact of any continuing violations.
 
 
 10
 To resolve this claim in Ellis's favor, we would have to conclude that the incremental emotional distress Gelson's inflicted by terminating Ellis was insignificant for purposes of the preemption question, but extremely severe for accrual of the cause of action. We find that Gelson's wrongful conduct prior to terminating Ellis was no longer actionable by the time Ellis filed his complaint. The district court did not err in considering only Gelson's conduct in terminating Ellis, and not its other alleged outrageous conduct, in deciding the preemption issue.
 
 B
 
 11
 Because Gelson's verbally and physically abusive conduct is no longer actionable, the sole actionable conduct giving rise to the claim of emotional distress is Gelson's termination of Ellis's employment.
 
 
 12
 "Section 301 governs claims founded directly on rights created by collective-bargaining agreements, and also claims 'substantially dependent on analysis of a collective-bargaining agreement.' " Caterpillar Inc. v. Williams, 482 U.S. 386, 394 (1987) (quotation omitted). Before a complaint will be deemed dependent upon a collective bargaining agreement, the plaintiff must invoke a right created by that agreement, id. at 399, or application of the state law invoked by the plaintiff must require the interpretation of the agreement, Lingle v. Norge Div. of Magic Chef, Inc., 486 U.S. 399, 413 (1988). Hayden v. Reickerd, 957 F.2d 1506, 1509 (9th Cir.1991). Resolution of the plaintiff 's state law claim must "depend[ ] upon the meaning of a collective-bargaining agreement" for the claim to be preempted. See Lingle, 486 U.S. at 406 & n. 5.
 
 
 13
 In order to determine whether a state law claim for infliction of intentional emotional distress is substantially dependent upon an interpretation of a collective bargaining agreement, the court must examine the elements of the state claim to ascertain whether any of the elements require a construction of the agreement. Lingle, 486 U.S. at 405-410; Stikes v. Chevron USA, Inc., 914 F.2d 1265, 1268 (9th Cir.1990), cert. denied, 111 S.Ct. 2015 (1991). To make out a prima facie case of intentional infliction of emotional distress, Ellis would have to show (1) outrageous conduct by Gelson's, " 'so extreme as to exceed all bounds of that usually tolerated in a civilized community;' " (2) intent or reckless disregard; (3) severe or extreme emotional distress; and (4) actual and proximate causation. Galvez, 933 F.2d at 779 (quotation omitted).
 
 
 14
 The only element of this claim that could require interpretation of the CBA is the outrageousness of Gelson's conduct in terminating Ellis. In determining whether Gelson's conduct was outrageous, the terms of the CBA can become relevant in that the fact that the CBA permits or prohibits conduct may bear on its reasonableness. Miller, 850 F.2d at 550. Miller established a three part test for assessing whether the section 301 remedy preempts a state law claim: (1) the CBA must contain provisions that govern the conduct giving rise to the claim; and (2) state law standards must be insufficiently defined to permit evaluation of the claim without reference to the CBA; or (3) state law must permit the relevant prohibitions or duties to be altered or waived by private contract. See Miller, 850 F.2d at 548, 550.
 
 
 15
 The offending behavior that Ellis can complain of is Gelson's treatment of his failure to return to work upon completion of his medical leave of absence as voluntary termination and Gelson's subsequent termination of his employment. The CBA in this case contains provisions governing discharge and, more specifically, governing failure to return to work following a leave of absence. Absent the CBA, Gelson's could discharge Ellis for no reason at all; his claim that terminating him for a bad reason--because of his aversion to and complaints about tobacco smoke--is conduct so extreme and outrageous as to be socially intolerable cannot be evaluated without considering the CBA's provisions granting him the right to be discharged only for cause. California has not conferred on its citizens a nonnegotiable right not to be discharged, even if such discharge would give rise to emotional distress. Cf. Cantu, 6 Cal.Rptr.2d 151, 169 (Ct.App.1992) (party is privileged to act in good faith to pursue own legal rights, even if emotional distress will result). Thus, under Miller, Ellis's claim of intentional infliction of emotional distress by wrongful termination is substantially dependent upon an interpretation of the CBA and hence is preempted by section 301. Accord Cook v. Lindsay Olive Growers, 911 F.2d at 239; Newberry v. Pacific Racing Ass'n, 854 F.2d 1142, 1149-50 (9th Cir.1988); Miller, 850 F.2d at 551; Hyles v. Mensing, 849 F.2d 1213, 1216 (9th Cir.1988).
 
 
 16
 The district court did not err in concluding that determination of whether Gelson's conduct in terminating Ellis was extreme and outrageous required interpretation of the CBA provision addressing discharge for reasonable cause. Ellis's claim of intentional infliction of emotional distress, insofar as it is actionable, is substantially dependent upon the CBA and hence is preempted by LMRA Sec. 301.
 
 
 17
 Ellis's contention that Gelson's should be estopped from arguing that his claim is preempted by federal law because it stipulated to his amendment of the complaint to add those claims is meritless. Gelson's expressly preserved all defenses in stipulating to the amendment. The district court did not err in denying Ellis's motion to remand.
 
 II
 
 18
 A final judgment on the merits precludes the parties from relitigating issues that were or could have been raised in that action. Federated Dep't Stores, Inc. v. Moitie, 452 U.S. 394, 398 (1981). A voluntary dismissal with prejudice has the effect of a final judgment on the merits. Clark v. Haas Group, Inc., 953 F.2d 1235, 1238 (10th Cir.), cert. denied, 113 S.Ct. 98 (1992); Samuels v. Northern Telecom, Inc., 942 F.2d 834, 836 (2d Cir.1991); Beard v. Sheet Metal Workers Union, Local 150, 908 F.2d 474, 477 n. 3 (9th Cir.1990).
 
 
 19
 In this case, the court entered a voluntary dismissal with prejudice upon the parties' stipulation to that effect. The stipulation, entitled "STIPULATION RE DISMISSAL WITH PREJUDICE OF DEFENDANTS GELSON'S MARKETS, INC. AND ARDEN-MAYFAIR, INC.," states that Ellis "hereby dismisses all of [his] claims for relief in this civil action (the 'Action') against defendants Gelson's and Arden-Mayfair, with prejudice." The dismissal has res judicata force, regardless that the suit being barred is actually the first-filed suit, not a later-filed suit, and Ellis has had no opportunity to litigate any of his claims. The Supreme Court has said that no equitable principle sanctions the rejection of res judicata. Federated, 452 U.S. at 401. This is truly a case where Ellis's predicament is of his own making. "Res judicata may not be avoided on the basis of ... an attorney's ill-considered decision to enter into an all-encompassing stipulation of withdrawal with prejudice." Samuels, 942 F.2d at 837.
 
 
 20
 Ellis claims that the stipulation on which dismissal was entered is binding only to the extent the parties intended it to be. The authorities he cited do not support his claim, and we found no such support. Moreover, arguments regarding the intent of the stipulation should have been addressed to the district court in the first instance.
 
 
 21
 Ellis further contends California would not give the prior judgment res judicata effect, so the district court should not. This is meritless. The res judicata impact of a federal judgment is a question of federal law. Sullivan v. First Affil. Sec., Inc., 813 F.2d 1368, 1376 (9th Cir.) (citing Limbach v. Hoven & Allison Co., 466 U.S. 353, 361-62 (1984)), cert. denied, 484 U.S. 850 (1987). The state court must give the prior federal judgment the same res judicata effect it would have in federal court. Beard, 908 F.2d at 477 n. 3.
 
 
 22
 Ellis also argues that res judicata should not apply because this case raises different causes of action from those presented in the voluntarily dismissed suit. But res judicata bars all claims that were brought or could have been brought. Federated, 452 U.S. at 398. One group of facts may give rise to different claims for relief upon different theories of recovery, yet still constitute a single cause of action. Clark, 953 F.2d at 1239 (citing Smith v. City of Chicago, 820 F.2d 916, 918 (7th Cir.1987)). Parties cannot defeat the application of res judicata by simply alleging different legal theories. Clark, 953 F.2d at 1238.
 
 
 23
 The sole transaction at issue in both lawsuits is Ellis's employment relationship with Gelson's. His claims of wrongful termination, albeit alleging different theories of breach of contract, violation of public policy, violation of statute (discrimination), and intentional infliction of emotional distress, all seek essentially the same damages arising from essentially the same conduct. Just as in Clark, 953 F.2d at 1239, had Ellis asserted his state claims in the second-filed action or sought to add the federal claim to this action, either court could, and surely would, have heard and determined both. See Brown v. Federated Department Stores, 653 F.2d 1266, 1267 (9th Cir.1981). Certainly Ellis may pursue parallel actions, see Sullivan, 813 F.2d at 1372, but he runs the risk that the first one to proceed to judgment will be given res judicata effect in the other. In Sullivan, an interlocutory appeal, the plaintiffs were not barred by res judicata because neither action had yet reached a final judgment. 813 F.2d at 1371.
 
 
 24
 A district court may exercise jurisdiction over pendent state claims despite the fact that the claim which served as the basis for federal jurisdiction is dismissed. See Harrell v. 20th Century Ins. Co., 934 F.2d 203, 205 (9th Cir.1991); Jackson, 881 F.2d at 646. The district court had supplemental jurisdiction to consider Ellis's claims for termination in violation of public policy and discrimination, even though not preempted by federal law, because the emotional distress claim was preempted by section 301 and provided a basis for removal. Although they are state law claims, they are still barred by the res judicata effect of the federal judgment. Beard, 908 F.2d at 477 n. 3; Brown, 653 F.2d at 1267. It was not an abuse of discretion for the district court to retain jurisdiction, because a state court would have been bound to give the same res judicata effect to the prior federal judgment, and judicial economy favored the resolution of all the claims in a single proceeding by one court.
 
 
 25
 The district court did not err in determining the stipulated dismissal with prejudice of Ellis's prior action against Gelson's was a res judicata bar to this action.
 
 III
 
 26
 Ellis's preemption claim presented a substantial question and, while ultimately not meritorious, was not frivolous. We decline to exercise our discretion to award attorney fees on appeal.
 
 
 27
 The district court's judgment is AFFIRMED.
 
 
 
 *
 This panel unanimously agrees that this case is appropriate for submission without oral argument. Fed.R.App.P. 34(a); 9th Cir.R. 34-4
 
 
 **
 The Honorable Floyd R. Gibson, Senior Circuit Judge for the United States Court of Appeal, Eighth Circuit, sitting by designation
 
 
 ***
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3